Filed 1/14/22  P. v. Leitch CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>STEPHEN PATRICK LEITCH,<br><br>  Defendant and Appellant. | F078227<br><br>(Kern Super. Ct. No. BF172468A)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Judith K. Dulcich, Judge.

Brad J. Poore, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein, and Jennifer M. Poe, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

**SEE CONCURRING AND DISSENTING OPINION**

## INTRODUCTION

Appellant and defendant Stephen Patrick Leitch was found in possession of a stolen truck. He was convicted of receiving a stolen vehicle and sentenced to six years in prison.

On appeal, defendant contends the court erroneously denied his motion to exclude his pretrial statements and his conviction is not supported by substantial evidence. We order the prior prison term enhancements stricken and otherwise affirm.

## FACTS

In 2018, Joseph Gonzalez owned a 1993 red Nissan hardbody pickup truck. He purchased the truck for a total of $15,000, when it was brand new. Gonzalez testified the truck was very heavy and made with double-thick steel, and it was a collector's item because that model was no longer being manufactured. It was a "cruising car" and equipped with thick tires and magnesium "show" wheels worth $400 each. The truck also had a good Sony stereo and speakers.

**Theft of truck**

On March 3, 2018, Gonzalez's truck was locked and parked outside his apartment; it was stolen from that location. He reported the theft to the police.

Gonzalez estimated the truck was worth $2,000 when it was stolen. It was operable and in good running condition. He had just purchased Michelin tires for it a few months earlier. The only problems with the vehicle were a dent in the corner of the bumper, some exterior rust, an inoperative right turn signal, the passenger door handle was missing, and the odometer stopped working at around 300,000 miles.

**Discovery of the stolen truck**

On June 1, 2018, Officer Choate of the California Highway Patrol (CHP), who was assigned to the Kern County Auto Theft Task Force, was on patrol in a residential area near Woodrow Avenue and Oildale Avenue. He noticed a Nissan pickup truck parked in front of a residence. It had a weird paint job and looked like it had been spray-

2.

painted black and blue over red paint. A man, later identified as defendant, was standing outside the driver's door. Defendant was jacking up the truck to replace a flat rear tire on the driver's side.

Officer Choate also noticed there was "a newer series California license plate" on the older model truck and thought the license plate was out of place. He ran a check on the license plate number and learned it belonged to a 2011 Volkswagen. He believed the truck could be a stolen vehicle.

**Defendant's prearrest statements**

Officer Choate requested backup assistance and continued to watch defendant, who walked to the passenger side of the truck and opened the door; a woman got out of the vehicle.

Officer Choate and three backup officers approached defendant as he was talking to the woman on the lawn. One officer spoke to the woman, and they walked a few steps away; she identified herself as Carissa C.

Officer Choate and another officer contacted defendant, and they spoke at the front of the truck. Choate asked defendant for his name and birthdate. Defendant said he was "Austin Robinson" and gave a birthdate. Choate asked defendant about the truck. Defendant said he bought it five months earlier, and it had been stolen from him. Defendant said he found the truck three weeks ago, and he recovered it without notifying law enforcement. Defendant said the truck had a new paint job. The ownership documents had been inside the truck and were missing when he found the vehicle.

**Defendant's postarrest statements**

Officer Choate determined the truck was stolen and arrested defendant. Defendant then volunteered that he wanted to give his real name, and said he falsely identified himself because he was on the run. Defendant gave his true name and birthdate. Choate

3.

asked why he was on the run. Defendant said he had an outstanding warrant and gave his brother's name. Choate testified defendant did not have a key to the truck.[1]

**Condition of the recovered truck**

Officer Choate inspected the truck at the scene and testified the steering column was broken, and the ignition could be started with any type of key. The Vehicle Identification Number (VIN) metal plate that was riveted to the dashboard had been ripped away. The VIN printed on the label inside the car door was scratched, painted over, and illegible. A screwdriver was inside the truck, and Choate explained that it could have been used to start the damaged ignition.

Officer Choate testified that he had previously encountered 1993 Nissan pickup trucks in his work. In general, he believed 1993 Nissan pickup trucks are worth $1,200 and up, depending upon the condition. Choate believed that the value of Gonzalez's truck, before it was destroyed, would have been between $1,000 and $1,200. He placed the truck's value at $1,000 in his report.

On June 4, 2018, Gonzalez was informed by the CHP that his truck had been recovered and towed to a storage facility. Gonzalez went to the storage facility and discovered his truck had been "completely vandalized and destroyed."

Gonzalez testified that based on his examination of his truck and photographs taken at the storage facility, the truck's front was spray painted black, the truck's bed was spray painted blue, three of the original tires had been swapped out, one tire was flat, the wheels were painted black, the engine had been changed, the stereo and speakers were pulled out, the air conditioning and heating ducts were removed, graffiti was carved into the hood, the windshield wipers were broken and removed, the steering wheel, shifter, and rearview mirror had been replaced, the right headlight was damaged, the hood was

---

[1] In issue I, *post*, we will address defendant's motion to exclude his pretrial statements, Officer Choate's testimony at the evidentiary hearing on the motion, the court's ruling, and whether those statements were properly admitted.

tied down because a hose was attached to the engine, and a different license plate was on the truck.

The original red paint could still be seen on top of the roof, under the hood, and in the truck's bed. There were pieces of the original engine in the truck bed, along with tools that did not belong to Gonzalez.

Gonzalez testified the truck could not be driven because of the flat tire, and the tow yard wanted $488 in storage fees. Gonzalez decided to surrender the vehicle to the tow yard because the truck was destroyed.

## **PROCEDURAL BACKGROUND**

On June 25, 2018, an information was filed in the Superior Court of Kern County case No. BF172468A, charging defendant with count 1, receiving a stolen vehicle (Pen. Code, § 496d, subd. (a)),[2] with allegations that he had two prior felony vehicle theft convictions within the meaning of section 666.5, subdivision (a), and four prior prison term enhancements (§ 667.5, subd. (b)).

On August 28, 2018, the court heard and denied defendant's motion to exclude his pretrial statements. Thereafter, defendant's jury trial began.

On August 30, 2018, defendant was convicted of count 1, and the jury found true the allegation that the truck was worth more than $950. The court found true the allegations that he had one prior vehicle theft conviction and three prior prison term enhancements; it found the other allegations not true.

On October 3, 2018, the court denied defendant's motion to reduce count 1 to a misdemeanor and to strike the enhancements. The court imposed an aggregate term of six years, based on the upper term of four years for count 1, plus two consecutive one-

---

[2] All further statutory references are to the Penal Code unless otherwise stated.

year terms for the prior prison term enhancements, and stayed the remaining enhancements.[3]

The court imposed a split sentence and ordered defendant to serve the first three years in custody, with the remainder of the term on mandatory supervision subject to certain terms and conditions.

The court imposed a restitution fine of $300 (§ 1202.4, subd. (b)) and suspended the parole revocation fine of $300 (§ 1202.45). It also imposed a court security fee of $40 (§ 1465.8), a criminal conviction assessment of $30 (Gov. Code, § 70373), and mandatory monthly supervision costs of $40 after he was released from custody.

**Appellate motions**

On October 3, 2018, defendant filed a notice of appeal from the judgment in the instant case.

On October 1, 2019, defendant filed a motion with this court to construe the notice of appeal in the instant case to constitute "constructive notice of appeal from the judgment and sentence" in case No. BF174502A; for leave to seek a certificate of probable cause; and for an order consolidating the appeals in case Nos. BF172468A and BF174502A because the two cases are closely related and disposed of at the same hearing. On November 27, 2019, this court denied the motion.

## DISCUSSION

### I.      The Court Correctly Admitted Defendant's Pretrial Statements

Defendant argues the court should have granted his motion to exclude his prearrest statements because he was subject to custodial interrogation in violation of *Miranda v.*

---

[3] A conviction for violating section 496d, subdivision (a) carries a sentence of 16 months, two years, or three years, or a fine of not more than $10,000, or both; or imprisonment in county jail not to exceed one year. Such a conviction with a prior theft-related conviction enhancement under section 666.5 carries a sentence of two, three, or four years, or a fine of not more than $10,000, or both. (§ 666.5, subd. (a).)

*Arizona* (1966) 384 U.S. 436. Defendant also contends his post-*Miranda* statements should have been excluded because he invoked his right to silence but Officer Choate asked him questions without re-advising him of his constitutional rights.

### A.    *Pretrial Motions*

Prior to trial, defense counsel filed a motion in limine to exclude all of his pretrial statements as being obtained in violation of *Miranda*.

The People's trial brief argued defendant's statements were admissible because they were not obtained in violation of *Miranda* since defendant was not in custody, he was only subject to brief preliminary questioning before he was arrested, and he spontaneously and voluntarily made additional statements after he was arrested.

### B.    *The Evidentiary Hearing*

On August 28, 2018, prior to the start of defendant's jury trial, the court held an evidentiary hearing on defendant's motion to exclude his pretrial statements. Officer Choate was the only witness.

Officer Choate testified he was on patrol, saw the parked truck, and noticed the license plate because it "didn't belong on the truck." Choate received information that "[t]he plate on the back of the truck did not belong on that truck. That plate belonged on a Volkswagen vehicle. This was obviously a Nissan truck to me. That is what initially drew my attention and led me to the contact."

Officer Choate and two other officers approached defendant and "casually made contact with him as he was standing outside the vehicle." Defendant was standing "near the front of the truck on the passenger side."

Officer Choate and the other two officers were wearing their "plain clothes uniform" of T-shirt and blue jeans, and police tactical vests that displayed their badges and "police markings" on the front and back.

7.

Officer Choate testified Officer Bridges first approached defendant and started talking to him about the truck. Officer Pomeroy separately contacted the female passenger. Officer Choate joined Bridges as he talked to defendant.

Officer Choate testified he spoke to defendant in a "casual" manner and "talked to him briefly about the truck, just trying to get some information about the truck itself." Choate also asked defendant for identifying information. Defendant said he was "Austin Robinson" and gave a birthdate.

Officer Choate asked defendant questions to address the problem with the license plate: "[I]s this your truck? Do you have any paperwork to show who the owner of the truck is? How long have you had the truck?" Defendant said it was his truck, but he did not have any paperwork. He said his truck had been stolen, he found it three weeks earlier, and the paperwork was missing.

Defendant was cooperative but seemed a little nervous. Officer Choate testified defendant was not in custody or in handcuffs. Choate considered him "detained" because of "[t]he license plate that was on the truck that I already knew did not belong on the truck." None of the officers had drawn their service weapons. When Choate spoke with defendant, he was the only officer with him. The second officer was about 20 feet away with the female passenger, and the third officer was walking around the truck.

Officer Choate testified he spoke with defendant for five to 10 minutes, and then determined the truck had been stolen. He placed defendant under arrest.

Officer Choate placed defendant in handcuffs and advised him of the warnings pursuant to *Miranda*. Defendant said he did not want to answer questions. Choate testified he did not ask defendant any further questions.

Officer Choate and his partner completed the paperwork for the recovery of the stolen truck, while defendant sat on the curb near the front of the truck. Choate testified that he and his partner were "having a conversation over the truck ourselves," and defendant was within "earshot" of their conversation. "[J]ust out of nowhere,

8.

[defendant], blurted out that he would tell me who he really was; that he didn't tell me who he really was because he was on the run." Defendant did not say that he gave a false name because he was in possession of the stolen truck.

In response to defendant's statement, Officer Choate approached defendant and asked for his real name. Defendant gave his true name and birthdate, and said he originally gave his brother's name and birthdate because he had a warrant and was on the run. Choate ran a records check and found two warrants for his arrest.

Defendant was transported from the scene without making any more statements or being asked further questions.

## C.     *The Parties' Arguments*

Defense counsel argued defendant was illegally detained when the officers initially approached him and asked about the truck because he was not free to leave. While defendant was eventually advised of the *Miranda* warnings and invoked his right to silence, he should have again received the advisements when he voluntarily made statements about his identity to ensure he understood his constitutional rights.

The prosecutor argued there was no custodial interrogation because the initial questioning was not lengthy or detailed, he was not placed in handcuffs, and the conversation was casual and cooperative. Defendant was not subject to detention and arrest until the officer determined the truck had been stolen. Defendant spontaneously made statements after he invoked his right to silence, and additional advisements were not required.

## D.     *The Court's Ruling*

The court admitted defendant's statements and denied his motion to exclude:

> "With respect to the statement, it is really two parts. The first part is before the defendant is arrested, and in listening to the testimony, it appears that although the defendant was detained during this conversation, that it was merely that. It was conversation.

9.

"It was investigatory in nature, trying to determine whether there was probable cause that a crime had been committed. The officer only knew that the wrong license plate was on the truck.

"Then once that was determined, the defendant was arrested.

"There is no indication that the officer did anything to elicit a statement—a further statement from the defendant; that he volunteered that information; that those were clearly spontaneous statements.

"So both parts of his statement will be admissible…."

The court excluded Officer Choate's determination that there were two outstanding warrants for defendant's arrest.

As set forth above, Officer Choate's trial testimony was consistent with his testimony at the evidentiary hearing, with the exception that Choate did not testify that he determined defendant had two outstanding warrants.

E. *Custodial Interrogation*

We begin with the question of whether defendant's pre-*Miranda* statements were admissible. "It is settled that *Miranda* advisements are required only when a person is subjected to 'custodial interrogation.' [Citations.]" (*People v. Davidson* (2013) 221 Cal.App.4th 966, 970.) "To determine whether a suspect was in *Miranda* custody we have asked whether 'there is a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest.' [Citations.]" (*Maryland v. Shatzer* (2010) 559 U.S. 98, 112.)

"As used in our *Miranda* case law, 'custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion. In determining whether a person is in custody in this sense, the initial step is to ascertain whether, in light of 'the objective circumstances of the interrogation,' [citation], a 'reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave.' [Citation.] And in order to determine how a suspect would have 'gauge[d]' his 'freedom of movement,' courts must examine 'all of the

circumstances surrounding the interrogation.' [Citation.] Relevant factors include the location of the questioning, [citation], its duration, [citation], statements made during the interview, [citations], the presence of absence of physical restraints during questioning, [citation], and the release of the interviewee at the end of the questioning, [citation]." (*Howes v. Fields* (2012) 565 U.S. 499, 508–509.)

"[W]hether a suspect is 'in custody' [for purposes of *Miranda*] is an objective inquiry." (*J.D.B. v. North Carolina* (2011) 564 U.S. 261, 270.) "[T]he 'subjective views harbored by either the interrogating officers or the person being questioned' are irrelevant. [Citation.]" (*Id.* at p. 271.) "[W]hether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of *Miranda*. [Citation.]" (*Stansbury v. California* (1994) 511 U.S. 318, 326; *People v. Moore* (2011) 51 Cal.4th 386, 402.) "The test, in other words, involves no consideration of the 'actual mindset' of the particular suspect subjected to police questioning. [Citations.]" (*J.D.B. v. North Carolina, supra*, 564 U.S. at p. 271.)

"[T]he freedom-of-movement test identifies only a necessary and not a sufficient condition for *Miranda* custody. We have declined to accord it " 'talismanic power,' " because *Miranda* is to be enforced 'only in those types of situations in which the concerns that powered the decision are implicated.' [Citation.]" (*Maryland v. Shatzer, supra,* 559 U.S. at pp. 112–113.)

As a result, "the temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop [citation] does not constitute *Miranda* custody. [Citations.]" (*Maryland v. Shatzer, supra,* 559 U.S. at p. 113, citing *Terry v. Ohio* (1968) 392 U.S. 1.) "The *Miranda* opinion itself permits '[g]eneral on-the-scene questioning as to facts surrounding a crime ....' [Citation.] A custodial interrogation does not occur where an officer detains a suspect for investigation and the questioning is limited to the purpose of identifying a suspect or 'to obtain [sufficient] information confirming or dispelling the

11.

officer's suspicions. [Citation.]' [Citations.]" (*People v. Davidson*, *supra*, 221 Cal.App.4th at p. 970.)

"Under the Fourth Amendment, … a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.' [Citation.] '[T]he stop and inquiry must be "reasonably related in scope to the justification for their initiation." ' [Citation.] Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released. The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." (*Berkemer v. McCarty* (1984) 468 U.S. 420, 439–440, fns. omitted.)

"The comparatively nonthreatening character of detentions of this sort explains the absence of any suggestion in our opinions that *Terry* stops are subject to the dictates of *Miranda*. The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." (*Berkemer v. McCarty, supra*, 468 U.S. at p. 440; accord, *Howes v. Fields, supra,* 565 U.S. at p. 510; *Maryland v. Shatzer*, *supra*, 559 U.S. at p. 113.)

" '[T]here is no hard and fast line to distinguish … investigative detentions from … de facto arrests. Instead, the issue is decided on the facts of each case, with focus on whether the police diligently pursued a means of investigation reasonably designed to dispel or confirm their suspicions quickly, using the least intrusive means reasonably

available under the circumstances.' [Citations.] Important to this assessment, however, are the 'duration, scope and purpose' of the stop. [Citation.]" (*People v. Celis* (2004) 33 Cal.4th 667, 674–675.) "[A]n investigative detention allows the police to ascertain whether suspicious conduct is criminal activity, [and] such a detention 'must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' [Citations.]" (*Id*. at p. 674.)

"Whether a defendant was in custody for *Miranda* purposes is a mixed question of law and fact. [Citation.] 'When reviewing a trial court's determination that a defendant did not undergo custodial interrogation,' an appellate court accepts the trial court's findings of historical fact if supported by substantial evidence but independently determines 'whether, given those circumstances,' the interrogation was custodial. [Citation.]" (*People v. Kopatz* (2015) 61 Cal.4th 62, 80.) We apply federal standards in reviewing defendant's claim that the challenged statements were elicited from him in violation of *Miranda.* (*People v. Bradford* (1997) 14 Cal.4th 1005, 1033.)

### 1.    Analysis

Defendant was not subject to custodial interrogation when the officers initially approached him, and Officer Choate asked for his name and about the truck. Choate testified that he noticed the truck when it was already parked at the curb, because the license plate appeared to be for a newer model vehicle. Choate ran a check on the license plate and discovered it belonged to a Volkswagen and not a Nissan pickup truck and decided to question defendant about the vehicle.

Defendant was standing outside the truck when the three officers arrived. He was not placed in handcuffs and the officers did not draw their service weapons. Officer Choate described his conversation with defendant as casual and cooperative, and it only lasted five to 10 minutes. Choate asked defendant to identify himself. Defendant answered the question but, unknown to Choate, gave a false name and birthdate. Choate asked about the truck, and defendant claimed it had been stolen from him, he personally

13.

retrieved it, and his ownership papers had been taken from the vehicle. Choate testified he determined the truck had been stolen and arrested defendant.

Choate's contact with defendant was extremely short and limited to determining his identification and trying to clarify why the license plate for a Volkswagen was on a 1993 Nissan pickup truck. While Choate considered defendant detained, it constituted an investigatory detention for a brief period that did not amount to custody. Choate was not required to advise defendant of the *Miranda* warnings, and his prearrest statements were admissible.

Finally, we note that in challenging the court's decision to admit his prearrest statements, defendant has relied on Officer Choate's testimony at both the evidentiary hearing and the trial. For example, defendant cites Choate's trial testimony that as he drove by the area, he noticed the "weird" paint job on the truck, he realized the vehicle was likely stolen, he called for backup officers, and his initial contact with defendant constituted custody and he should have immediately advised defendant of the *Miranda* warnings. As already explained, however, "the 'subjective views harbored by either the interrogating officers or the person being questioned' are irrelevant. [Citation.]" (*J.D.B. v. North Carolina, supra,* 564 U.S. at p. 271.) "[W]hether the interrogating officers have focused their suspicions upon the individual being questioned (assuming those suspicions remain undisclosed) is not relevant for purposes of *Miranda.* [Citation.]" (*Stansbury v. California, supra,* 511 U.S. at p. 326.)

### F. *Invocation of Right to Silence and Voluntary Statements*

We next turn to the admission of defendant's post-*Miranda* statements.

Once the defendant is subject to custodial interrogation, he must be informed of the *Miranda* advisements and, if he indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. (*People v. Davis* (2009) 46 Cal.4th 539, 585.) An interrogation is defined as express questioning or "words or actions on the part of the police that they should know are 'reasonably likely

14.

to elicit an incriminating response.' [Citation.]" (*People v. Bradford*, *supra*, 14 Cal.4th at p. 1034; *People v. Hensley* (2014) 59 Cal.4th 788, 810.)

When a suspect invokes the right to remain silent, that decision must be " 'scrupulously honored.' " (*Michigan v. Mosley* (1975) 423 U.S. 96, 104, fn. omitted.) "However, if the defendant thereafter initiates a statement to police, 'nothing in the Fifth and Fourteenth Amendments … prohibit[s] the police from merely listening to his voluntary, volunteered statements and using them against him at the trial.' [Citation.]" (*People v. Bradford*, *supra*, 14 Cal.4th at p. 1034.)

A valid waiver may be express or "implied from the defendant's words and actions. [Citations.]" (*People v. Parker* (2017) 2 Cal.5th 1184, 1216.) When a suspect who has " 'heard and understood a full explanation of his or her *Miranda* rights, then makes an uncompelled and uncoerced decision to talk, he or she has thereby knowingly, voluntarily, and intelligently waived them.' [Citations.]" (*People v. Parker, supra*, 2 Cal.5th at p. 1216.) "A suspect's expressed willingness to answer questions after acknowledging an understanding of his or her *Miranda* rights has itself been held sufficient to constitute an implied waiver of such rights. [Citations.]" (*People v. Sauceda-Contreras* (2012) 55 Cal.4th 203, 218–219.)

"Ideally, the *Miranda* warnings should be repeated before reinitiating the interrogation of a suspect who has invoked the right to remain silent, but the failure to do so is not fatal if the 'totality of the circumstances' shows the suspect's waiver remains voluntary, knowing and intelligent. Our Supreme Court has identified factors the trial court should consider in determining whether readvisement is necessary. These include 'the amount of time that has passed since the waiver, any change in the identity of the interrogator or the location of the interview, any official reminder of the prior advisement, the suspect's sophistication or past experience with law enforcement, and any indicia that he subjectively understands and waives his rights.' Any misconduct by the police in reinstituting the interrogation of course must also be taken into

consideration." (*People v. Riva* (2003) 112 Cal.App.4th 981, 993–994, fns. omitted, disapproved on other grounds in *People v. Anderson* (2020) 9 Cal.5th 946, 957; *People v. Williams* (2010) 49 Cal.4th 405, 434–435.)

### 1. Analysis

Defendant was not subject to an illegal interrogation after he was arrested. Officer Choate testified that he determined the truck was stolen, arrested defendant, placed him in handcuffs. Choate advised him of the *Miranda* warnings, defendant invoked his right to remain silent, and there is no evidence that any of the officers questioned defendant after that invocation.

Officer Choate testified that defendant sat on the curb, and Choate and another officer completed the paperwork for recovery of the stolen vehicle. Choate and the other officer discussed the truck, and Choate testified that defendant could hear their conversation. There is no evidence the officers engaged in any coercive conduct or made statements that were reasonably likely to elicit an incriminating response. At that time, defendant spontaneously "blurted out" that he would reveal his real name and said that "he didn't tell me who he really was because he was on the run." Choate asked defendant for his real name. Defendant identified himself and gave his true birthdate, and said he originally gave his brother's name and birthdate because he had a warrant and was on the run. Defendant was transported from the scene without being asked any further questions.

Defendant's voluntary and spontaneous were made shortly after being advised of his constitutional rights and invoking his right to remain silent. His decision to voluntarily reveal his identity constituted an implied waiver of his right to remain silent. Officer Choate's subsequent question was limited to asking for his real name. Choate was not required to readvised him of the *Miranda* warnings given the short passage of time between the original advisement, his invocation of the right to remain silent, and his decision to voluntarily disclose his true name. (See, e.g., *People v. Pearson* (2012) 53

16.

Cal.4th 306, 315 [second interview was reasonably contemporaneous with interview held 27 hours earlier]; *People v. Miller* (1996) 46 Cal.App.4th 412, 418 [about five and one-half hours], disapproved on other grounds in *People v. Cortez* (1998) 18 Cal.4th 1223, 1239; *People v. Spencer* (2018) 5 Cal.5th 642, 668, 670 [five hours].)

## II. Defendant's Conviction for Receiving a Stolen Vehicle

In count 1, defendant was charged and convicted of receiving a stolen vehicle, the Nissan pickup truck, in violation of section § 496d, subdivision (a). On appeal, he raises two separate but related arguments to challenge this conviction. First, he contends that as a result of the enactment of Proposition 47, a violation of this statute requires proof that the stolen vehicle was worth $950 or more. Second, he argues the jury was improperly instructed with CALCRIM No. 1750 on how to determination whether the truck was worth $950 or more, and the court should not have allowed Officer Choate to testify as an expert on his opinion that on the truck's value.

After supplemental briefing, the parties agree that in *People v. Orozco* (2020) 9 Cal.5th 111 (*Orozco*), the California Supreme Court resolved these issues contrary to defendant's arguments. As explained in *Orozco*, Proposition 47 amended several statutory provisions to reduce certain criminal offenses from felonies to misdemeanors. Among these changes, it "amended section 496, the general statute that criminalizes receipt of stolen property, by making the offense a misdemeanor whenever the value of the property does not exceed $950. [Citation.] But Proposition 47 did not amend section 496d," that prohibits the receipt of a stolen vehicle. (*Orozco,* at p. 115.) After an analysis of the initiative and relevant statutes, Orozco concluded that "Proposition 47's amendment to section 496(a) [did] not affect convictions for receiving stolen property under section 496d." (*Id.* at p. 123.)

As a result of *Orozco*, the prosecution did not have the burden to prove the truck was worth $950 or more, and defendant's additional arguments, about the alleged instructional error and that Choate improperly testified as an expert, are rendered moot.

17.

Defendant acknowledges the holding in *Orozco* and concedes this court is bound by the decision. In order to preserve issues for further review, however, he argues that *Orozco* violates equal protection and leads to absurd results by distinguishing between receiving stolen property and receiving a stolen vehicle, since both defendants would be similarly situated. The People take the contrary position and assert *Orozco* refuted these same arguments.

*Orozco* rejected the argument that "section 496d qualifies as a 'theft offense' within the meaning of section 490.2 and is thus subject to section 490.2's general provision that all theft offenses involving property valued at $950 or less are misdemeanors. [Citation.]" (*Orozco, supra,* 9 Cal.5th at p. 121.) While *Orozco* did not involve an equal protection claim, the court addressed a similar contention – that punishing receipt of stolen vehicles more severely than vehicle theft or receipt of other stolen property resulted in absurd consequences. (*Id*. at p. 122.) *Orozco* rejected the absurdity challenge and held there were plausible reasons for the differential treatment. (*Ibid.*) "For example, the electorate could have concluded that stolen vehicles, unlike other items of stolen property, are often dismantled and sold for parts on the secondary market, which can raise their worth above retail value." (*Ibid.*)

This is a plausible reason for treating the offenses differently under rational basis review. In addition, the existence of identical penal statutes prescribing different punishments does not violate equal protection principles, nor does the prosecutor's exercise of discretion in charging under one statute or the other. (*People v. Wilkinson* (2004) 33 Cal.4th 821, 838.) "[S]o long as there is no showing that a defendant 'has been singled out deliberately for prosecution on the basis of some invidious criterion,' that is, ' "one that is arbitrary and thus unjustified because it bears no rational relationship to legitimate law enforcement interests[,]" ' the defendant cannot make out an equal protection violation. [Citation.]" (*Id*. at p. 838–839.)

18.

## III.  The Prior Prison Term Enhancements

The court found defendant had three prior prison term enhancements (§ 667.5, subd. (a)).  Defendant was sentenced to the upper term of four years for count 1, plus two consecutive years for two of the enhancements.

Defendant contends, and the People agree, that the true findings and terms imposed for the prior prison term enhancements must be stricken.

Effective January 1, 2020, Senate Bill No. 136 amended section 667.5, subdivision (b), to limit prior prison term enhancements to only prior terms that were served for sexually violent offenses as defined by Welfare and Institutions Code section 6600, subdivision (b).  (§ 667.5, subd. (b), as amended by Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.)  None of defendant's prior prison terms were served for a sexually violent offense, and the court's true findings and the sentences imposed must be stricken so that defendant's aggregate term is four years.[4]

## IV.  The Fines and Fees

Defendant asserts the court improperly ordered him to pay fines and fees in violation of his due process rights because it failed to determine if he had the ability to pay these amounts, as set forth in *People v. Dueñas* (2019) 30 Cal.App.5th 1157.

### A.  *Fines and Fees in Unrelated Case*

We first note that in his opening brief, defendant also seeks appellate review of fines and fees imposed in case No. 18FE022872.  There is no record in this case of a sentence being imposed in that case number.

We note that while the record was being prepared in this case, this court granted a motion to augment for the record in case No. BF174502A, where defendant entered pleas, sentenced, and fees imposed in an unrelated case.

---

[4] Based on this conclusion, we need not reach defendant's alternate argument that the court should have granted his motion to dismiss the prior prison term enhancements.

19.

On November 27, 2019, prior to the filing of defendant's opening brief, this court denied his motion to construe the notice of appeal in this case to include an appeal from the judgment and sentence in case No. BF174502A.

We thus limit our review to the fines and fees imposed in the instant case.

**B.** ***Defendant's Contentions About the Fines and Fees Imposed in this Case***

Defendant's due process argument is based on *Dueñas*, which was decided after his sentencing hearing and while this appeal was pending. *Dueñas* held that "due process of law requires the trial court to conduct an ability to pay hearing and ascertain a defendant's present ability to pay" before it imposes any fines or fees. (*Dueñas, supra*, 30 Cal.App.5th at pp. 1164, 1167.)[5]

As we explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055 (*Aviles*), we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive. (*Aviles*, pp. 1068–1072.) Under that standard, the fines and fees imposed in this case are not grossly disproportionate to defendant's level of culpability and the harm he inflicted, and thus not excessive under the Eighth Amendment. (*Aviles*, at p. 1072.)

Next, to the extent *Dueñas* applies to this case, defendant did not forfeit review of the issue. Section 1202.4, subdivisions (c) and (d) permit a party to raise an ability to pay objection when the court imposes a restitution fine above the statutory minimum. The court imposed the statutory minimum restitution fine of $300, and defendant lacked the statutory ability to raise an ability to pay objection. In addition, any objections to the assessments imposed under section 1465.8 and Government Code section 70373 would

---

[5] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

not have been futile. (See, e.g., *Aviles, supra*, 39 Cal.App.5th at p. 1074; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1154.)**6**

Even if we agreed with *Dueñas*, we would still reject defendant's constitutional claims and find any error arising from the court's failure to make an ability to pay finding was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24; *People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031; *People v. Johnson* (2019) 35 Cal.App.5th 134, 139–140.**7**

" ' "Ability to pay does not necessarily require existing employment or cash on hand." [Citation.] "[I]n determining whether a defendant has the ability to pay a restitution fine, the court is not limited to considering a defendant's *present* ability but may consider a defendant's ability to pay in the future." [Citation.] This include[s] the defendant's ability to obtain prison wages and to earn money after his release from custody. [Citation.]' [Citations.]" (*Aviles, supra*, 39 Cal.App.5th at p. 1076.)

We can infer from the instant record that defendant has the ability to pay the amount of the fine and fees imposed in this case from probable future wages, including prison wages. (*Aviles, supra*, 39 Cal.App.5th at p. 1076; *People v. Ellis* (2019) 31 Cal.App.5th 1090, 1094; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397.) There is nothing in the record to show that defendant would be unable to satisfy the fines and fees imposed by the court while serving his prison term, even if he fails to obtain a prison job.

---

**6** Defendant states that on October 31, 2019, he filed a motion with the superior court pursuant to section 1237.2 to strike the fines and fees, and the court denied the motion. As defendant correctly notes, he was not required to comply with section 1237.2 to preserve this issue for review since he has raised additional issues in this appeal.

**7** As noted by the People, defendant states in his opening brief that he is challenging the $30 criminal conviction assessment (Gov. Code, § 70373) imposed in the instant case No. BF172468A; and separately challenging the $40 court security fee (§ 1465.8) imposed in the unrelated case No. 18FE022872. As we have already explained, defendant's notice of appeal was limited to case No. BF172468A, and we will address the entirety of the fines and fees imposed in this case.

While it may take defendant time to pay the amounts imposed in this case, that circumstance does not support his inability to make payments on these amounts from either prison wages or monetary gifts from family and friends during his prison sentence. (See, e.g., *People v. Potts* (2019) 6 Cal.5th 1012, 1056–1057; *People v. Lewis* (2009) 46 Cal.4th 1255, 1321; *People v. DeFrance* (2008) 167 Cal.App.4th 486, 505.)

We conclude that based on the record before this court, defendant has the ability to pay the restitution fine and fees that were imposed.

## **DISPOSITION**

The court's true findings and the sentences imposed for the three section 667.5, subdivision (b) prior prison term enhancements are stricken, and defendant's sentence is modified to four years. The trial court shall prepare an amended abstract of judgment and forward copies to all appropriate parties. In all other respects the judgment is affirmed.

POOCHIGIAN, J.

I CONCUR:

LEVY, ACTING P. J.

22.

MEEHAN, J., Concurring and Dissenting.

With respect to defendant's *Dueñas* claim addressed in part IV. of the Discussion, I agree with the majority that defendant did not forfeit review of his claim, but on this undeveloped record, I would follow the decision in *People v. Montes* (2021) 59 Cal.App.5th 1107, 1111 (*Montes*) and remand the matter to allow the parties to address the issues and develop the record. Therefore, I respectfully dissent.

As explained in *Montes*, "[w]here … a defendant advances a claim premised on a significant and unforeseeable development in the law that occurred after sentencing and during the pendency of the appeal; there was no statutory right to object to the restitution fine and court assessments at issue; and the record is wholly undeveloped on the issue, a limited remand is appropriate to allow the parties to address the issue in the trial court in the first instance." (*Montes, supra*, 59 Cal.App.5th at p. 1122.) "Discretion to determine an appropriate fine amount rests with the trial court and the court is free to consider, among other factors, any money received by a defendant, be it in the form of prison wages or gifts. (*People v. Potts* (2019) 6 Cal.5th 1012, 1055–1056 [concluding trial court could lawfully impose $10,000 restitution fine despite condemned inmate's categorical ineligibility to earn prison wages and his receipt of only occasional small gifts of money from family, and rejecting argument 'that a fine is automatically invalid if a defendant is unable to pay it'].)" (*Ibid.*)

The majority concludes that any error is harmless, and "there is authority supporting the proposition that prisoners are able to pay fines, fees and assessments out of future prison wages (*People v. Santos* [(2019)] 38 Cal.App.5th [923,] 934; [*People v.*] *Kopp* [(2019)] 38 Cal.App.5th [47,] 96, review granted [Nov. 13, 2019, S257844]; [*People v.*] *Jones* [(2019)] 36 Cal.App.5th [1028,] 1035; *People v. Douglas* (1995) 39 Cal.App.4th 1385, 1397; *People v. Gentry* (1994) 28 Cal.App.4th 1374, 1376–1377; *People v. Frye* (1994) 21 Cal.App.4th 1483, 1487), or small gifts from friends or family (*People v. Potts*, *supra*, 6 Cal.5th at pp. 1055–1056) …." (*Montes, supra,* 59 Cal.App.5th

at p. 1123.)  However, in the absence of any record regarding defendant's present and future ability to pay, a finding of harmless error requires speculation.  (*Ibid.*)

On these grounds and with the exception of the forfeiture issue, I respectfully dissent from the majority's conclusions in part IV. of the Discussion.


MEEHAN, J.